LAND, J.
Defendant was convicted of the crime of carnal knowledge of an unmarried female under the age of 18 years, in violation of Act 192 of 1912, and was sen-fenced to imprisonment at hard labor for a term of not less than 12 nor more than 18 months. The record contains 13 bills of exceptions. We find it necessary, however, to consider only bills 2, 3, 5, and 6, and bills 7 and 8.
Bills 2 and 3 were reserved to the ruling of the trial judge in denying to the defendant the right to propound to the prosecuting witness certain questions as to acts of sexual intercourse by her with designated per> sons; bills 5 and 6 were reserved to the exclusion by the state of the testimony of certain witnesses for defendant who were offered to rebut the testimony of the prosecutrix that the infant exhibited by her to the jury was the child of the defendant;'and bills 7 and 8 were reserved by defendant to .the introduction of the public school records of Winn parish for the purpose of establishing as corroborative evidence, the age of the prosecutrix, on the ground that the authenticity of said records had not been established. The prosecutrix had been permitted, in the examination in chief, and over the objection of defendant, to testify that the baby which she was then holding in her arms, and which she had presented to the jury, and which had been offered by the district attorney and ordered filed in evidence, was the child of the defendant, R. T. Gibbs. On cross-examination the counsel of defendant propounded to the prosecutrix the following questions:
“Q. I will ask you that if while you and Jim Woody were going together, if he did not have, sexual intercourse with you?”
“Q. I will ask you if it is not a fact that during the'time while you were in the company of Tom Weeks during that night or the next morning if Tom Weeks did not have intercourse with you?”
The following question was asked Festus Brown, witness for the defendant, on direct examination:
“Q. Did you see [prosecutrix] and Hick Martin together, and what were they doing?”
Artis Brewton, being called by defendant, was asked on direct examination:
“Q. Did you ever see Hick Martin and [prosecutrix] together?”
All of these questions were objected to as irrelevant and immaterial, and the objection was sustained by the trial judge, for the reason that the purpose of this testimony *277 was to hold the prosecuting witness up to the jury as a prostitute, and thereby prejudice their minds against her testimony, and that the testimony proffered by defendant was clearly inadmissible to rebut the testimony of the prosecutrix going to prove the fatherhood of the child. The judge a quo states in his per curiam:
“She swore it was his and he swore it was. n.ot his. Certainly no other witness could testify as to this except perhaps an expert on blood tests of father and child.”
There is no statute in this state which provides that in cases of disputed paternity this issue shall be decided exclusively by blood tests of the father and of the child to be made by experts. The question of paternity vel non had become an issue of fact before the jury in this case, and the weight and sufficiency of the evidence and the credibility of the witnesses in the proof of this fact was a matter exclusively within the province of the jury, and which the jury alone, under the Constitution of the state, had the legal right to determine. If such evidence was material and pertinent, it could not be excluded by the trial judge, because in his opinion it would not be sufficient to rebut the paternity of the child. The trial judge in this state is prohibited from commenting on the facts in a criminal case. He cannot state or repeat to the jury the testimony of any. witness, nor give any opinion as to what facts have been proved or disproved, but is limited to giving them a knowledge of the law applicable to the case. R. S. 1870, § 991.
Defendant’s counsel contends that the testimony sought to be introduced and the questions above propounded were relevant for the purpose of rebutting the testimony given by the prosecutrix as to the paternity of the child, and for the purpose of laying the basis of impeachment and contradiction.
 It is well settled that a prosecutrix under Act 192 of 1912 cannot be impeached by an attack upon her chastity, either by proof of general reputation as a woman of dissolute conduct, or of individual acts of lewdness, as the statute is violated just as much by carnal knowledge of an unchaste female as of a chaste female. A. & E. vol. 25, p. 251; State v. Romero, 117 La. 1003, 42 South. 482 ; State v. Baudoin, 115 La. 837, 40 South. 239 ; State v. Hobgood, 46 La. Ann. 857, 15 South. 406.
Had the prosecuting officer proven in corroboration acts of sexual intercourse committed by defendant with the prosecutrix in addition to the specific act charged, and rested the state’s case at this point, the objection of the state as to the irrelevancy of other similar acts with other men wouldi have been well-taken. But the state’s attorney in his zeal went beyond this point, and,, as a corroborating circumstance, filed the infant in evidence in the case, exhibited' it iru the arms of its mother to the jury, and called upon the mother to declare its paternity. She named the defendant as its father. The trial judge states in the bill of exceptions: “She swore it was his, and he swore it was not his.” The production of the infant before the jury was proof conclusive that the prosecutrix had been intimate with some one.' She had fixed the guilt in her testimony upon the accused, who had denied that he was the father of the child. If a defendant under such circumstances cannot rebut the charge of paternity by showing illicit acts by the prosecutrix with other men, then the testimony of a prosecutrix in all cases of this kind would be final and conclusive, and a defendant would be powerless to refute the charge against him, although he had the evidence at hand in his defense.
The state itself has opened the door in this case by unnecessarily going irito the question of the paternity of the child as a corroborating circumstance. The only possible means of defense to such a charge is its denial by the accused and the proof of *279 acts of intercourse with others than himself. If a defendant, after the denial of such illicit acts by the prosecutrix, can es< tablish the truth of such acts, this would necessarily affect her credibility. A mere denial by a defendant, unsupported by proof of other sexual acts on the part of the prosecutrix, would present, at best, a weak defense to a charge of paternity before a jury, when the interest of the defendant in his acquittal is considered,-and the natural sympathy for the prosecutrix is weighed. The importance of the testimony tendered by the defendant-in this case is therefore apparent. Specific acts with others than the defendant may be shown to rebut corroborating circumstances, as when the woman is pregnant, or has miscarried; or given birth to a child. 33 Cyc. pp. 1480, 1481.
The denial to defendant of the right to propound to the prosecutrix questions as to her conduct with other men, and the exclusion of the testimony along this line offered by defendant, was therefore erroneous and prejudicial.
The school records of Winn parish for the years 1911 and 1919, showing lists of educated children and their ages, were offered, in evidence by the state on the trial of this case. These lists contained the name and 'age Of the prosecutrix. They were objected to by counsel for defendant on the ground that there was nothing to show that they were authentic.
Section 2 of Act 129 of 1898, an act to provide for the enumeration of the educable .children of the state, as amended by Act 48 of 1908, provides that it shall be the duty of the assessors to make a correct enumera-1 tion by giving the names of educable children between the ages of 6 and 18 years in the respective parishes and wards by race and sex; that this list shall be made in triplicate form, and that one list shall be furnished to the board of school directors of the parish in which the enumeration is. made.
Section 57 of Act 120 of 1916, an act in relation to free public schools in the state of Louisiana, provides that the parish school boards of all the parishes of the state shall make an enumeration of all educable children in their respective parishes between January 1, 1919, ahfd July 1, 1919, and every four years thereafter. It therefore appears that such lists are official registers, and are admissible in evidence, notwithstanding their authenticity is not confirmed by those usual and ordinary, tests of truth, the obligation of an oath, and the power of cross-examining the persons, on whose authority the truth of the documents depends. The extraordinary degree of confidence which is reposed in such documents is founded principally upon the circumstance that they have been made by authorized and accredited agents appointed for that purpose, but partly, also, upon the publicity of their subject-matter. 1 .Greenleaf on Evidence (16th Ed.) § 483, p. 630.
These lists, presented in the original, were therefore admissible in evidence.
It is therefore ordered, adjudged, and decreed that the verdict and sentence appealed from be annulled, avoided, and reversed, and that this case be remanded to the lower court for a new trial in accordance with the views herein expressed.
O’NIELL, C. J., concurs in the result.