No. 2299.
Second Circuit Appeal.

---

MRS. MARY THOMAS, TUTRIX v. WILLIAM M. CADY LUMBER COMPANY, INC.

(June 6, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Appeal—Par. 625.
The judgment of the Trial Court as to the age of plaintiff being manifestly correct, is affirmed.

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. L. L. Hooe, Judge.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

B. T. Dawkins, of Alexandria, attorney for plaintiff, appellee.

Overton & Hunter of Alexandria, attorneys for defendant, appellant.

REYNOLDS, J. This a suit by Mary Thomas as Tutrix of Laura Van Dyke against William M. Cady Lumber Company, Inc., to recover compensation under the

workmen's compensation act for the death of her brother, Wesley Van Dyke.

And it is agreed by counsel for plaintiff and defendant that the only issue in the case is as to the age of Laura Van Dyke, the beneficiary under the statute.

Under paragraphs (h) and (k) of Section 8 of Act 20 of 1914 as amended by Act 43 of 1922, Laura Van Dyke would be entitled to compensation for the death of her brother Wesley Van Dyke only if she was under 18 years of age at the time of his death and then only until she attained the age of 18 years.

Plaintiff contends that Laura Van Dyke, was born on November 10, 1906.

Admittedly her brother, Wesley Van Dyke, was killed on October 6, 1922.

Compensation is therefore claimed for her from October 6, 1922, to November 10, 1924.

Defendant contends that plaintiff has not established with reasonable certainty that Laura Van Dyke was under 18 years of age at the time of her brother's death.

### OPINION

In support of her contention that Laura Van Dyke was under 18 years of age on October 6, 1922, plaintiff, on the first trial, introduced the testimony of Bertha Robinson who testified:

(Page 12).

"Q. When was Laura Van Dyke born?
"A. On November 10, 1906.

(Page 14).

"Q. Is there anything that makes you recall when Laura was born?
"A. I remember when she was born because I nursed her. I was her nurse.
"Q. Have you any other reason to recall?
"A. I taken care of her while my mother helped my father work.

(Page 15).

"Q. Are you positive as to the date of Laura's birth?
"A. Yes, sir; November 10th, 1906.

"Q. That was the date of Laura's birth?
"A. Yes, sir."

Mary Thomas testified, on the second trial, page 1.

"Q. How long has Laura Van Dyke been living with you?
"A. Eleven going on twelve years.
"Q. How old is Laura?
"A. Seventeen and will be eighteen her next birthday.
"Q. When is her next birthday?
"A. November 10th.
"Q. Then, as I understand it, Laura will be eighteen years old on November 10th, 1924?
"A. Yes, sir.
"Q. When was she born?
"A. In 1906.
"Q. What date?
"A. The tenth of November.

(Page 2).

"Q. From whom did you receive the information as to the age of Laura?
"A. From my sister-in-law, Rosa Van Dyke.

(Page 3).

"Q. How did you get your information from your sister-in-law at San Antonio, Texas?
"A. She was living at Bunkie, Louisiana, at the time, and my sister-in-law was at my home and visiting me when this child was here, and I asked her age.
"Q. You got it then from her in person?
"A. Yes, sir, not once but several times.

(Page 4).

"Q. Have you heard Laura's age discussed amongst her relatives and the members of her family, within the last year or so?
"A. Yes, sir, we've discussed it.
"Q. How many members of Laura's family have you heard discuss it, that is, discuss her age?
"A. Please repeat the question.
"Q. I asked you how many members of Laura's family have you heard discuss Laura's age?
"A. I don't know just how many. My sister-in-law and myself and my family— I guess that was about all—I don't remember just how many.

(Page 6).

"Q. Now, did I understand you to say that you remembered the age of this child by reason of the fact that your sister-in-law had two children born on the 10th of December?

"A. No, sir, one, a boy born on December 10—after Laura was born.

(Page 7).

"Q. You have no personal knowledge of the birth of this child, have you or not?

"A. Only what they told me.

"Q. How old was this child when she came to live with you?

"A. She was six years old.

"Q. When did she come to live with you?

"A. In 1913, I think it was in August, 1913, if I am not mistaken, I think it was.

"Q. In 1913?

"A. Yes, sir, I think it was in 1913.

"Q. And you say that she was six years old when she came to live with you?

"A. She was going on six. She came to me in August, in the summer months, and she would be six in November of that year.

"Q. In 1913, in November, she would be six?

"A. I think so.

"Q. You are sure that she wasn't over six?

"A. No, sir, she wasn't.

"Q. It is a fact, then, that they told you, in August, 1913?

"A. I didn't say positively August, but in the summer months.

"Q. They told you in the summer of 1913, when she came to you, that she was already six years old?

"A. In her sixth year.

(Page 8).

"Q. Going on six?

"A. When I inquired as to her age they said she was six years old.

"Q. Then, in November, 1913, did you count her age as being six, or seven, years old?

"A. She would have been seven. She came to me in the summer months—she would have been seven.

(Page 9).

"Q. When was the first time that you told Mr. Dawkins, or anybody else, that you knew the age of this child?

"A. I don't know what date it was,

but when Mr. Dawkins got the case I told him then, as near as I could, because he asked me how old she was—and I told him just when she was born, and he figured it out that she was born in 1905—which was a mistake.

(Page 11).

"Q. Is that child of your sister-in-law's living now?

"A. Yes, sir.

"Q. How old is that child?

"A. He will be eighteen years old in December."

Sandy Thomas testified, page 13:

"Q. According to what members of the family have said, what is Laura's present age?

"A. Well, according to the definite information I could get from her sister, she is coming eighteen.

"Q. By 'coming eighteen' what do you mean?

"A. Eighteen years old in November, her next birthday.

"Q. She will be eighteen years old next November—is that what you mean?

"A. Yes, sir." * * *

"Q. I understood your wife to say that she was about six years old when she came there?

"A. Five or six years old, I judge, from the size of her.

"Q. Could she have been older than that, Sandy?

"A. I hardly think so, as I judge her age according to her size."

(Page 14):

"Q. I am trying to show that you don't know positively.

"A. I said I didn't know positively."
* * *

"Q. She could be going on nineteen, so far as you know?

"A. I could not say she is or that she is not, but I say, from the time the child came, she looked to be about five or six years old."

Laura Van Dyke testified, page 15:

"Q. Laura, how old are you?

"A. Eighteen in November.

"Q. You will be eighteen in November?

"A. Yes, sir.

"Q. You mean this coming November?

"A. Yes, sir, the 10th.

"Q. November 10th, 1924?

"A. Yes, sir." * * *

"Q. I asked you how old you were on October 6, 1922.
"A. Sixteen." * * *
"Q. I asked you if you were fully sixteen, or not, on October 6th, 1922?
"A. I was sixteen."

(Page 16):

"Q. You were not going on sixteen?
"A. I was going on sixteen— I would be sixteen on November 10th.
"Q. Well, how do you know your birthday?
"A. By what my people told me.
"Q. You have no record to show it?
"A. No, sir."

Against this evidence as to Laura Van Dyke's age, defendant introduced in evidence, over plaintiff's objection, a school record kept for the year 1919, under the requirements of section 30 of Act 120 of 1916.

Defendant cites in support of the admissibility of this record the case of State vs. Gibbs, 153 La. 274, 95 South. 716.

A careful reading of this case shows that in it the Supreme Court was passing on the question of the admissibility and not on the weight of such a record as evidence.

We think that the district judge properly allowed the introduction of this school record as evidence and we also think he properly considered and weighed it as such.

Laura Van Dyke swore positively that she did not give her age to Susie L. Belcher, the teacher who made this record, and there is no evidence whatever in the record to show how or from whom Susie L. Belcher obtained the information on which she made the entry on the record.

According to this record, Laura Van Dyke entered the 5th A Grade of South Alexandria School in September, 1919, and her age is given as 15 years.

The district judge who heard all the evidence and saw the witnesses testify reached the conclusion that Laura Van Dyke became 18 years of age on November 10th, 1924. All the evidence in the case convinces us that this finding of fact was correct.

It is, therefore, ordered, adjudged and decreed that the judgment of the district court be affirmed.